**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1270-22

LUIS FERMIN,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

     Argued October 9, 2024 – Decided November 19, 2024

     Before Judges Mayer and Rose.

     On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx2576.

     Eric V. Kleiner argued the cause for appellant.

     Robert J. Papazian argued the cause for respondent (Gebhardt & Kiefer, PC, attorneys; Leslie A. Parikh and Linda M. Brown, on the brief).

PER CURIAM

Petitioner Luis Fermin, a former police officer with the City of Paterson (City) Police Department, appeals from a November 16, 2022 final decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS), rejecting the administrative law judge's (ALJ) initial decision, which reversed the Board's denial of Fermin's request to apply for accidental disability retirement benefits (ADRB). Because we conclude the record supports the Board's decision that Fermin irrevocably resigned from his employment with the City pursuant to the terms of their settlement agreement, we affirm.

I.

The facts are straightforward and, for purposes of this appeal, largely undisputed. Fermin commenced his employment with the City as a Paterson Police Officer in January 2005. During the early morning hours of January 1, 2018, Fermin was seated in the passenger side of a car driven by a "female civilian companion" when an unidentified man approached the vehicle at a traffic light. Believing the man reached for a gun, Fermin fired three rounds from his service weapon and the man fled. Fermin was off-duty at the time of the incident.

A-1270-22

Following an internal affairs investigation, Fermin was issued a preliminary notice of disciplinary action (PNDA) on January 2, 2019, recommending his termination. According to the PNDA, "Fermin left the scene without": "reporting the incident to police headquarters"; "attempting to identify or contain the identified male"; and "without reporting he fired the shots from his service weapon to police headquarters." Further, "Fermin returned to the scene in a different vehicle [from] the one involved in the incident, thereby contaminating the scene."

The PNDA charged Fermin with the following acts of misconduct under N.J.A.C. 4A:2-2.3(a)(1), (3), (6), (7), and (12): "[i]ncompetency, inefficiency or failure to perform duties"; "[i]nability to perform duties"; "[c]onduct unbecoming a public employee"; "[n]eglect of duty"; and "[o]ther sufficient cause." The PNDA also charged Fermin with misconduct and suspended him without pay under N.J.A.C. 4A:2-2.5(a)(1) based on the City's determination that he was "unfit for duty and an immediate suspension [wa]s necessary to maintain safety, health order and/or effective direction of public service."

A-1270-22

On November 26, 2019, Fermin and the City signed a Memorandum of Agreement (MOA).[1]  Pertinent to this appeal, the City agreed to withdraw all pending disciplinary charges without prejudice.   Fermin agreed to "immediately meet with the City's Personnel Office to begin the process for filing for a disability retirement pension with the PFRS."  The MOA further provided:

> 5.  If Fermin withdraws his pension application or fails to comply with all State of New Jersey and City requirements for processing his disability retirement in an expeditious manner, Fermin's current disciplinary charges shall be reinstated, and Fermin will be terminated.
>
> 6.  The City does not object to and/or takes no position as to Fermin's accidental disability claim and shall cooperate with any requests for information or documentation from the New Jersey Division of Pensions.  The City shall provide the parties to the disability application with standard police reports and incident reports related to the incident . . . wherein Fermin claims he discharged his weapon in self-defense.
>
> 7.  Fermin hereby understands and agrees that from February 1, 2020 forward[,] he is forever barred from taking any actions as a law enforcement officer for the Paterson Police Department.

---

[1]  The MOA was re-executed on March 12, 2020, with certain revisions that did not substantively alter the relevant terms.  We set forth the terms of the March 12, 2020 MOA.

A-1270-22

Fermin applied for ADRB on November 26, 2019, the same day he signed the initial MOA.

On October 21, 2020, the Division's Disability Review Section determined Fermin was ineligible to apply for disability benefits under N.J.A.C. 17:1-6.4(b), which "requires that disability applicants must prove that the retirement is due to a total and permanent disability and that the disability is the reason the member left employment." After reviewing Fermin's application and the MOA, the Division reasoned Fermin could not comply with N.J.S.A. 43:16A-8(2) because "there would be no position for [him] should [his] alleged disability diminish at some point in the future to the point that [he] could return to employment."

On January 13, 2021, the Board denied Fermin's ensuing request to apply for ADRB for the same reasons stated by the Division. Fermin appealed the Board's decision and the matter was transmitted to the Office of Administrative Law as a contested case. Fermin and the City filed cross-motions for summary decision. See N.J.A.C. 1:1-12.5(a) ("A party may move for summary decision upon all or any of the substantive issues in a contested case."). The sole issue presented on the undisputed facts was whether the MOA "preclude[d] Fermin from applying for [ADRB]."

On August 2, 2022, the ALJ issued an initial decision reversing the Board's legal determination. The ALJ concluded "the plain language of N.J.S.A. 43:16A-8(2) does not contemplate barring a member from applying for benefits" and any interpretation otherwise "conflict[s] with the plain language of N.J.S.A. 43:16A-7(a)(1)" (permitting a PFRS member to apply for ADRB). Citing the terms of the MOA, the ALJ noted: "It seems somewhat contradictory to reference a document that specifically states Fermin is to apply for [ADRB] as a reason to bar Fermin from applying for said benefits." Further, "in the less-than-likely hypothetical situation relied on by the Board, wherein Fermin receives benefits, recovers, and is then denied reemployment, the Board, upon determining that Fermin is fully recovered from his disability, could simply discontinue benefits and Fermin could seek employment elsewhere."

The Board rejected the ALJ's initial decision, maintaining its determination that, pursuant to the terms of the MOA and the governing law, Fermin is not eligible to apply for ADRB. This appeal followed.

## II.

Well-settled principles guide our review. "Judicial review of agency determinations is limited." <u>Allstars Auto Grp., Inc. v. N.J. Motor Vehicle</u>

Comm'n, 234 N.J. 150, 157 (2018). An agency decision will be upheld "unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006); see also Lavezzi v. State, 219 N.J. 163, 171 (2014).

"Because an agency's determination on summary decision is a legal determination, our review is de novo." L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 204 (2015). We also exercise de novo review of the interpretation of a settlement agreement as it is subject to ordinary principles of contract law. See Thompson v. City of Atlantic City, 190 N.J. 359, 374 (2007); Polarome Int'l, Inc. v. Greenwich Ins. Co., 404 N.J. Super. 241, 260 (App. Div. 2008).

7

A reviewing court is "not bound by the agency's interpretation of a statute or resolution of a question of law." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001); see also Allstars, 234 N.J. at 158. However, "[w]e will overturn an agency's interpretation of a statute it implements only when it is 'plainly unreasonable.'" In re Comm'r's Failure to Adopt 861 CPT Codes, 358 N.J. Super. 135, 149 (App. Div. 2003) (quoting Merin v. Maglaki, 126 N.J. 430, 437 (1992)). A reviewing court therefore "affords a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi, 219 N.J. at 171 (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). That presumption is particularly strong when an agency is dealing with specialized matters within its area of expertise. See Newark, 82 N.J. at 540.

An agency is empowered to reject and modify an ALJ's initial decision, but its authority to do so is not boundless. When an agency rejects an ALJ's decision, regulations require the agency to clearly state the basis for its rejection and cite specific evidence supporting its final decision and interpretation of the law. N.J.A.C. 1:1-18.6(b). The Board's discretion includes the authority to adopt, reject, or modify the ALJ's findings of credibility of expert witnesses. In re Adoption of Amends. to Ne., Upper

Raritan, Sussex Cnty., 435 N.J. Super. 571, 584 (App. Div. 2014). However, "[t]he agency head may not reject or modify any findings of fact as to issues of credibility of lay witness testimony unless it is first determined from a review of the record that the findings are arbitrary, capricious[,] or unreasonable or are not supported by sufficient, competent, and credible evidence in the record." N.J.S.A. 52:14B-10(c).

The "separation for service rule . . . generally requires disability retirement applicants to prove that their asserted disability is 'the reason the member left employment.'" In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 397 (App. Div. 2018) (quoting N.J.A.C. 17:1-6.4(a)). Relevant here, "[t]he rule also bars members from applying for a disability retirement if they voluntarily or involuntarily terminate service" by "[r]emoval for cause or total forfeiture of public service" and "[s]ettlement agreements reached due to pending administrative or criminal charges, unless the underlying charges relate to the disability." Id. at 397-98 (quoting N.J.A.C. 17:1-6.4(b)(1) and (2)). "[A]lthough a person eligible for benefits is entitled to a liberal interpretation of a pension statute, 'eligibility [itself] is not to be liberally permitted.'" Id. at 399 (quoting Smith v. Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007)). "Members who leave

public service for reasons unrelated to a disability are not entitled to disability retirement benefits in the first instance." Id. at 404.

The "restoration to active service" statute provides, in pertinent part:

> Any beneficiary under the age of 55 years who has been retired on a disability retirement allowance under this act, on his [or her] request shall, or upon the request of the retirement system may, be given a medical examination and he [or she] shall submit to any examination by a physician or physicians designated by the medical board once a year for at least a period of five years following his retirement in order to determine whether or not the disability which existed at the time he was retired has vanished or has materially diminished. If the report of the medical board shall show that such beneficiary is able to perform either his former duty or any other available duty in the department which his employer is willing to assign to him, the beneficiary shall report for duty; such a beneficiary shall not suffer any loss of benefits while he awaits his restoration to active service. If the beneficiary fails to submit to any such medical examination or fails to return to duty within 10 days after being ordered so to do, or within such further time as may be allowed by the board of trustees for valid reason, as the case may be, the pension shall be discontinued during such default.

[N.J.S.A. 43:16A-8(2) (emphasis added).]

Against these guiding legal principles, we reject Fermin's argument that the Board misapplied the law, including his contention agencies typically "follow the ALJ's recommendations." As this matter was resolved on

10

summary decision, the issue presented turned on the legal interpretation of the MOA and the governing rule and statute. The Board clearly stated its reasons for rejecting the ALJ's initial decision. See N.J.A.C. 1:1-18.6(b).

We are likewise unpersuaded by Fermin's overlapping arguments that the Board's decision "was arbitrary and capricious and was not supported by the factual record." More particularly, Fermin argues the Board mistakenly interpreted the MOA. He maintains the MOA was not a quid pro quo agreement because its purposes primarily were limited to the City's obligation to: resolve the outstanding money owed him under his contract in view of his total disability; "fully cooperate and support" his disability application; and dismiss the disciplinary charges "solely" based on his permanent disability. Thus, Fermin claims the Board erroneously relied on our decision in Cardinale v. Board of Trustees, Police and Firemen's Retirement System, 458 N.J. Super. 260 (App. Div. 2019), which was not cited by the ALJ, to resolve his eligibility issue.

Contrary to Fermin's contentions, our decision in Cardinale – issued eight months before Fermin signed the initial MOA – supports the Board's decision in the present matter even though the facts are not on all fours. In Cardinale, a former police officer voluntarily and irrevocably retired from his

position pursuant to a settlement agreement following his suspension for a positive random drug test. Id. at 264-65. Unlike the MOA in the present matter, the settlement agreement in Cardinale "acknowledged [the petitioner] would proceed with his application for ordinary disability benefits at his 'sole risk.'" Id. at 265. Also, unlike Fermin, Cardinale testified at the hearing before the ALJ and "conceded that he was recovering and no longer disabled." Ibid.

The ALJ in Cardinale determined "the settlement agreement did not bind the Board," a non-party to the contract. Id. at 266. The Board adopted the initial decision, reasoning "the only obstacle to [the petitioner's] reemployment was not the purported disability, but rather, his irrevocable resignation." Thus, "assuming Cardinale was disabled but later became rehabilitated," the Board concluded "it would have no statutory authority to stop paying benefits." Id. at 265.

We affirmed the Board's decision, holding "when a PFRS member . . . voluntarily irrevocably resigns from active service, such a separation from employment automatically renders the individual ineligible for ordinary disability benefits." Id. at 263 (emphasis added). Of particular relevance to this appeal, we concluded the petitioner's claimed disability was "irrelevant

12

to our holding that his irrevocable resignation made him ineligible for benefits in the first place." Id. at 268.

Citing the "unambiguous[]" terms of the restoration to active duty service, we noted a PFRS member who retired due to disability, but then recovered sufficiently to "perform either his former duty or any other available duty in the department which his employer is willing to assign to him . . . shall report for duty." Id. at 269 (quoting N.J.S.A. 43:16A-8(a)). The statute's purpose "is to return the previously disabled retiree to work as if that individual had never suffered a disability or interruption of service." Id. at 270. The statute "balances a worker's interest with those of an employer and the public by requiring PFRS workers – upon rehabilitation – to forgo the benefits and return to work." Ibid. We concluded "Cardinale's permanent inability to return to duty [wa]s fatal." Ibid. We therefore recognized:

> Importantly, a member's irrevocable resignation presents a practical problem that strains the workability of the system. N.J.S.A. 43:16A-8(2) envisions only one circumstance when disability benefits may cease. That situation, which does not apply to members who irrevocably resign from work, arises when the Board grants retirement benefits to a PFRS retiree, that retiree's disability vanishes or materially diminishes, and then that retiree fails to return to duty after the Board orders the retiree to do so.

[Id. at 270-71.]

Thus, the process set forth in the statute, when a recipient recovers from his or her disability and returns to work, provides the sole means for the Board to terminate disability benefits. Id. at 271.

We therefore concluded permitting public employees to seek disability benefits when they have irrevocably retired would prevent the State from ever terminating disability benefits, even upon the member's recovery, because the member could never "return" to his or her former employment. Such an outcome "would violate public policy, contravene the rehabilitation statute, and encourage abuse of the disability retirement system." Id. at 273. Accordingly, Cardinale's irrevocable resignation rendered him ineligible for participation in the disability pension scheme. Ibid.

Here, as the Board correctly concluded, similar to the settlement agreement in Cardinale, the terms of the MOA prevent Fermin from complying with N.J.S.A. 43:16A-8(2). Specifically, should the medical board determine Fermin "is able to perform either his former duty or any other available duty in the department" he must "report for duty" but he cannot do so because, pursuant to the terms of the MOA he is "forever barred from future employment with [the City]." Thus, assuming Fermin were entitled to

14

ADRB, should he fully recover, he could not "simply discontinue benefits and . . . seek employment elsewhere," as the ALJ suggested. See Cardinale, 458 N.J. Super. at 269. Rather, Fermin's "permanent inability to return to duty is fatal." Id. at 270.

Having conducted a de novo review of the record and governing legal principles, L.A., 221 N.J. at 204, we are satisfied the Board properly rejected the ALJ's initial decision. We conclude the Board's decision "is supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D). To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1270-22